25CA0583 Marriage of Thorburn 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0583
Jefferson County District Court No. 19DR30372
Honorable Diego G. Hunt, Judge

---

In re the Marriage of

Danielle Thorburn,

Appellee,

and

James Thorburn,

Appellant.

---

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

Miller Family Law, LLC, Kate Miller, Jenny Kiousis, Jessica Hoyt, Denver,
Colorado, for Appellee

Thorburn Law Group, LLC, James D. Thorburn, Greenwood Village, Colorado,
for Appellant

¶ 1    In this post-dissolution of marriage case involving James Thorburn (father) and Danielle Thorburn (mother), father appeals the district court's order modifying parenting time. We affirm the order and remand the case to the district court for further proceedings.

## I.    Relevant Facts

¶ 2    In 2020, the district court dissolved the parties' marriage. In the permanent orders, the parties agreed that mother would be the primary residential parent for the parties' one child and that father would follow a step-up parenting time schedule, beginning with an overnight visit every week and progressing to equal time in nine months.

¶ 3    In early 2021,[1] a magistrate entered an order restricting father to supervised parenting time in a facility setting after finding that the child had sustained multiple injuries while in his care (restriction order). The restriction order required father to comply with all recommendations and treatment plans issued by the

---

[1] Although not clear from the record, we will assume for purposes of this opinion that father was exercising equal parenting time at this point.

Department of Human Services and to complete a parenting class. However, the restriction order also stated that once father finished those requirements and the facility felt that supervision was no longer necessary, the supervisor would suggest a new step-up parenting plan. If the parties could not agree on the proposed plan, they could have the court decide.

¶ 4 Father filed a petition for review with the district court, which adopted the restriction order. Father then appealed, and a division of this court affirmed the restriction order in *In re Marriage of Thorburn*, 2022 COA 80. Our supreme court denied certiorari.

¶ 5 In September 2022, father, citing the permanent orders, filed a motion to "return to equal parenting time." He attached a letter from the supervising facility indicating that there were no concerns during his visits with the child.

¶ 6 At a later status conference, father clarified his motion, asserting that the 2021 restriction order was temporary. He explained that he was "not looking to modify permanent orders, [only] to keep [them] [and] . . . [do away] [with] the temporary order." Unconvinced, the district court construed the motion as a request to modify the restriction order.

¶ 7    In January 2025, the district court held an evidentiary hearing. At the start, the parties agreed that

- mother would remain the primary parent;

- father would have unsupervised parenting time three weekends per month, from Friday to Tuesday, during the school year;

- the parties would split parenting time evenly during the summer; and

- there would be no restrictions on father's parenting time.

In the written order issued a month later (the February 2025 parenting order), the district court adopted the parties' agreement, finding that it was in the child's best interest.

¶ 8    Father appeals the district court's characterization of his motion as one to modify the restriction order.

## II.    Discussion

¶ 9    Father maintains that the restriction order merely placed a temporary limitation on his parenting time and didn't modify the parenting time schedule established in the permanent orders. He thus contends that the district court erred by not accepting his motion for equal parenting time as a request to lift the temporary

3

restriction and return directly to equal parenting time and instead construing it as a motion to modify. We disagree.

### A. Father Didn't Waive His Appellate Contentions

¶ 10 Given that father agreed at the hearing to the unsupervised parenting time schedule, we must first consider whether he waived his challenge to the parenting time order. Although the issue is close, we conclude that he didn't.

¶ 11 Waiver is "the intentional relinquishment of a known right." *In re Marriage of Kann*, 2017 COA 94, ¶ 55. Although waiver may be implied from a party's conduct, such conduct "must be free from ambiguity and clearly manifest the [party's] intent" to relinquish the right. *In re Marriage of Hill*, 166 P.3d 269, 273 (Colo. App. 2007). When considering a party's conduct, we examine the totality of the circumstances surrounding the conduct and indulge every reasonable presumption against finding waiver. *Bernache v. Brown*, 2020 COA 106, ¶ 10.

¶ 12 Here, father consistently asserted that his motion for equal parenting time wasn't a motion to modify parenting time. The district court disagreed and construed it as one. It was only after the court proceeded in the modification context that father agreed

to the current parenting time schedule.  He further requested that the court note in its order that it "heard [father's] Motions as a Motion to Modify over the objections of [father]."  Under these circumstances, we don't view his agreement as a waiver.

### B.     Standard of Review and Applicable Law

¶ 13     We review de novo whether the district court applied the correct legal standard.  *In re Marriage of Crouch*, 2021 COA 3, ¶ 21.

¶ 14     A district court may modify a parenting time order whenever such modification serves the child's best interests. § 14-10-129(1)(a)(I), C.R.S. 2025.  The child's best interests are generally "the controlling factor" when entering any parenting time order.  *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 14.

¶ 15     Whether an order for allocation of parental responsibilities is temporary or final is determined by examining the substance and effect of the order.  *In Interest of C.T.G.*, 179 P.3d 213, 221 (Colo. App. 2007).

### C.     The Restriction Order Modified the Permanent Orders

¶ 16     We reject father's argument that the district court incorrectly construed his motion as a motion to modify.  The restriction order

in this case was not temporary, nor did it simply "suspend" permanent orders. Although the order imposed conditions upon father, it didn't contemplate an "automatic" or "direct" return to the prior orders after father met those conditions.[2] Instead, the parties could either "agree to implement" a step-up plan or "*return to court to determine the same*." (Emphasis added.) *See Thorburn,* ¶ 10 ("In the end, the magistrate continued father's supervised parenting time and imposed certain conditions that father must meet before requesting a modification.").

¶ 17    Thus, the restriction order significantly altered the parenting time schedule going forward. Once the court found a change in circumstances sufficient to support a restriction under section 14-10-129(4), which is part of the statute that governs modifications of parenting time, the resulting order necessarily modified the permanent orders. *See C.T.G.,* 179 P.3d at 221 ("Permanent orders establish parental rights that stay in effect until one party establishes a change in circumstances sufficient to

---

[2] Even if the order had provided for an automatic return to the previous schedule, a court may modify a parenting time order "whenever such . . . modification would serve the best interests of the child." § 14-10-129(1)(a)(I), C.R.S. 2025.

support a modification."). Put simply, the restriction order replaced the 2020 parenting time schedule and became the controlling order. The court therefore correctly treated father's motion to return to equal parenting time as a motion to modify the restriction order.

¶ 18    Further, we don't review temporary parenting time orders. *In re Marriage of Rappe*, 650 P.2d 1352, 1353 (Colo. App. 1982) (a temporary parenting time order is not final for purposes of appeal). And the division of this court that decided father's first appeal concluded that the restriction order was final and appealable. *See Thorburn*, ¶ 19; C.A.R. 1(a)(1); *see also L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14 (a final judgment means a ruling or order that disposes of the litigation and leaves nothing further for the court to do).

¶ 19    Father also raises a related contention that the district court erred because it sua sponte amended the relief he sought in his motion to return to equal parenting time. As we understand it, father contends that the district court should *only* have decided whether the child was endangered in his care, and if it found that the child was not endangered, it should have automatically granted him equal parenting time. This boils down to an argument that the

district court was precluded from determining whether an equal parenting time schedule was in the child's best interests because all father asked for was a decision about whether the restriction was necessary and, if not, an automatic restoration of equal parenting time.

¶ 20    We reject this argument.  First, as explained above, no provision of the restriction order entitled father to an "automatic" return to equal parenting time.  Second, mother opposed father's request to move to equal parenting time, and if the parties hadn't agreed to a parenting time schedule, resolving their dispute would have required the court to consider what parenting time schedule was in the child's best interests even if it concluded that a restriction was no longer needed.  Third, the court is required to consider the child's best interests when making *any* order allocating parenting time.  § 14-10-124(1.5), C.R.S. 2025.

¶ 21    Next, relying on *In re Marriage of Dale*, 2026 CO 35, and *In re Marriage of Wenciker*, 2022 COA 74, father insists that supervised parenting time is a restriction that cannot also modify the permanent orders.  Neither case says that.  Any language in *Dale* distinguishing restrictions from modifications was directed at

identifying whether a quantitative change in the existing parenting time order constituted a restriction — which would require the court to apply the more onerous endangerment standard — or a mere modification — which would only require the court to apply the best interests of the child standard. *See Dale*, ¶¶ 39-41, 43. And in *Wenciker*, the division addressed the interplay between an emergency motion to restrict and a later motion to modify.[3] *Wenciker*, ¶¶ 2-3.

¶ 22     For all these reasons, we cannot say the district court erred by construing father's motion as a motion to modify.

¶ 23     We decline to address father's undeveloped argument that the modification hearing was conducted as an "emergency abbreviated" proceeding and should have been a "full hearing" allowing him to present certain evidence. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also O'Quinn v. Baca*, 250 P.3d 629, 631-32

---

[3] We don't consider father's citation to and reliance on an unpublished decision by a division of this court. *See Brooks v. City & County of Denver*, 2026 COA 42, ¶ 17 n.3.

(Colo. App. 2010) (parties should not expect an appellate court to peruse the record without help of pinpoint citations).

### III. Appellate Attorney Fees and Costs

¶ 24    Under C.A.R. 39.1 and section 13-17-102, C.R.S. 2025, mother asks for her appellate attorney fees, asserting that father's appeal was substantially vexatious. An award of appellate attorney fees based on such a request is appropriate only in clear and unequivocal cases where no rational argument is presented. *In re Marriage of Boettcher*, 2018 COA 34, ¶ 38, *aff'd*, 2019 CO 81. Even though father did not succeed, we deny the request.

¶ 25    Asserting that the parties' financial resources are disparate, mother also asks for her attorney fees under section 14-10-119, C.R.S. 2025. *See Boettcher*, ¶ 34 (section 14-10-119 empowers the court to equitably apportion attorney fees and costs between the parties based on their relative ability to pay). As the district court is best situated to determine the factual issues regarding the parties' current financial resources, we direct the court to decide whether to award mother her reasonable appellate attorney fees under section 14-10-119. *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 89.

¶ 26    Mother is entitled to her appellate costs.  *See* C.A.R. 39(a)(2) (if a judgment is affirmed, costs are taxed against the appellant).  She may pursue those costs in the district court by following the procedure described in C.A.R. 39(c)(2).  *See In re Marriage of Clark*, 2025 COA 75, ¶ 33.

## IV.    Disposition

¶ 27    The order is affirmed.  At oral argument, mother said, and we agree, that any restriction on father's parenting time was extinguished by the February 2025 parenting order.  We therefore make clear that the prior parenting time restrictions are no longer in effect.

¶ 28    The case is remanded to the district court for further proceedings concerning mother's request for section 14-10-119 appellate attorney fees and costs.

JUDGE WELLING and JUDGE SCHOCK concur.